# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 6, 2007 Session

## STATE OF TENNESSEE v. HEZEKIAH COOPER

**Appeal from the Criminal Court for Shelby County**
**No. 02-05089      Joseph P. Dailey, Judge**

---

**No. W2005-02481-CCA-R3-CD  - Filed December 20, 2007**

---

Appellant, Hezekiah Cooper, was convicted of four counts of attempt to commit second degree murder, four counts of aggravated robbery, one count of aggravated burglary, and one count of possession of a firearm.  As a result, the trial court sentenced Appellant to an effective sixty-year sentence.  After the denial of a motion for new trial, Appellant presents the following issues for our review: (1) whether the evidence is sufficient to support the convictions; (2) whether the trial court erred "in refusing to allow Appellant to argue alternative theories" at trial; (3) whether the trial court erred in refusing to admit exculpatory evidence; (4) whether the trial court improperly instructed the jury on lesser included offenses; (5) whether Appellant's sentences were excessive; and (6) whether the trial court erred by ordering Appellant to serve his sentences consecutively.  After reviewing the issues, we determine that: (1) Appellant waived the issue regarding lesser included offenses for failing to request instructions at trial; (2) the trial court did not abuse its discretion in failing to admit exculpatory evidence; (3) Appellant waived several evidentiary issues by raising them for the first time on appeal; and (4) the trial court properly sentenced Appellant.  However, we determine that the evidence was only sufficient to support two convictions for attempted second degree murder with respect to the actions against Ms. Thompson and her daughter Tanisha.  Therefore, we reverse and dismiss the two remaining convictions for attempted second degree murder.  Further, we determine that the evidence supports only one conviction for aggravated robbery because there was only one theft from the victims' residence of property that was owned by Mr. Norfleet.  However, we modify the conviction for aggravated robbery with respect to Jeraldrika Thompson to a conviction for aggravated assault and remand to the trial court for sentencing on that count.  However, we are unable to modify the two remaining convictions for aggravated robbery with respect to the actions taken against Ms. Thompson and Tanisha Thompson to aggravated assault because double jeopardy principles prohibit dual convictions for attempted second degree murder and aggravated assault. Accordingly, the convictions for aggravated robbery with respect to Ms. Thompson and Tanisha Thompson are reversed and dismissed.  In all other respects, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed in Part; Modified in Part; Reversed and Dismissed in Part.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES, and ALAN E. GLENN, JJ., joined.

Paul J. Springer, Memphis, Tennessee, for the appellant, Hezekiah Cooper.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Greg Gilbert and Nicole Germain, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

On June 27, 2002, the Shelby County Grand Jury indicted Appellant with ten counts of criminal attempt to commit first degree murder, one count of especially aggravated robbery, four counts of aggravated robbery, one count of especially aggravated burglary, and one count of possession of a firearm, for his role in connection with a home invasion that occurred on November 25, 2001, in Memphis.

At trial, Tara Thompson testified that she was at her home on the evening of November 25, 2001, with her three children, three-year-old Tanisha Thompson, eleven-year-old Jeraldrika Thompson, and fifteen-year-old Edwin Norfleet. Also present at the house was Tallen Williams, who was Ms. Thompson's boyfriend and Tanisha's father. All five of them had gone Christmas shopping that day and returned home sometime in the early evening. While out shopping, they purchased some early Christmas presents, including a Playstation II video game system and several games. The Playstation II was a Christmas present for Mr. Norfleet. According to Ms. Thompson, after they returned home, Tanisha and Jeraldrika went to bed at around 8:00 p.m. Mr. Williams and Mr. Norfleet remained in the living room, where they played a game on the Playstation II.

Ms. Thompson stated that between 9:00 p.m. and 10:00 p.m., she heard a loud banging on the front door of the house. She opened the door and saw a "brown-skinned" African-American man with a medium build standing on the sidewalk twenty to thirty feet away. According to Ms. Thompson, the man was pointing a handgun at her. The man's mouth was covered, but the rest of his face was visible. Ms. Thompson was able to see the man with the aid of her porch light and two street lights that were located next to her home.

Upon seeing the man outside, Ms. Thompson closed the door and began yelling "somebody's out there with a gun." Ms. Thompson grabbed the phone on her way through the living room, ran to her daughters' bedroom and called 911. Mr. Williams followed Ms. Thompson into the girls' bedroom, and Mr. Norfleet stayed in his bedroom. As Ms. Thompson was on the phone with

emergency personnel, she grabbed both of her daughters out of bed and put them on the floor so that she could cover them up.

Ms. Thompson testified that three men kicked open the front door and shot their guns through the living room window as they charged into the house. In addition to the man carrying a handgun, there was a second man carrying a .12 gauge shotgun. According to Ms. Thompson, the man with the handgun entered Jeraldrika and Tanisha's bedroom and informed Ms. Thompson that Tanisha would be shot if she did not stop crying. Ms. Thompson testified that she pleaded with the intruder, telling him that Tanisha was scared and could not stop crying. The intruder informed her that she needed to be quiet "or else" and continued to point the handgun at Ms. Thompson and Tanisha, who was in her mother's arms. Ms. Thompson could see a third man in the living room dismantling the Playstation II from the television. This man had on a mask, but Ms. Thompson could tell that he was a light-skinned, African-American man.

Mr. Norfleet testified that he and Mr. Williams were playing the new Playstation II that night in the living room. Sometime after 8:00 p.m., Mr. Norfleet went to bed. He had been in his room for about thirty minutes, trying to go to sleep when he heard noise at the front door that sounded like kicking. Mr. Norfleet hid behind the door. A few moments later, a man came in his room with a .12 gauge shotgun and demanded money. Mr. Norfleet testified that he was face-to-face with the intruder and was able to get a good look at him. Mr. Norfleet told the intruder that he did not know where the money was. In response to Mr. Norfleet's answer, the intruder began hitting Mr. Norfleet on top of his head and above his left ear with the butt of the shotgun. Mr. Norfleet fell to the floor in an attempt to protect himself. The intruder made Mr. Norfleet get up and ordered him to walk out of the room into the hallway in front of his sisters' bedroom. The intruder continued to demand money.

From his vantage point in the hallway, Mr. Norfleet was able to see inside his sisters' room. He saw a second man holding a handgun. The man with the handgun had a "flat top" style haircut and was about Mr. Norfleet's height. At that point, the men exchanged places, and the man with the handgun pointed the gun at Mr. Norfleet's back. When the men changed places, Ms. Thompson noticed that she could see the face of the man with the handgun because it was no longer covered. Ms. Thompson stated that the man had gold teeth, big lips and a head shaped like a "lemon." The man with the handgun ordered Mr. Norfleet to go to his mother's bedroom, place his hands behind his head, and get on the floor.

Ms. Thompson claimed that the man with the shotgun pointed the gun at her and demanded money. When Ms. Thompson told the man that she did not have any money, he shot the gun at her and her daughter. The shotgun blast struck Ms. Thompson in the face, and she began to bleed profusely. The blast also struck the family dog, Pinkie, who later had to have one of her front legs amputated. Ms. Thompson thought that she was going to die after she was shot in the face.

Ms. Thompson heard the man in the living room yell "Police" and saw him run out the back door. The remaining two men ran out the front door of the house. The men took the Playstation II, some video games and some money from Mr. Williams' pants.

Aaron Porterfield, one of Ms. Thompson's neighbors, witnessed some of the events that evening. As he was unloading some groceries from his car, Mr. Porterfield saw three men standing outside Ms. Thompson's home. One man had a .12 gauge sawed-off shotgun, and the other two men were kicking the front door. When they could not open the door, Mr. Porterfield saw the men shoot at the door. Mr. Porterfield saw the men enter the house. After they entered the house, Mr. Porterfield heard screaming, more shots and a dog barking.

Mr. Porterfield called 911. He was on the phone with the 911 dispatcher when the shooting occurred. He remained on the line until the police arrived and the three men ran out of the house. Mr. Porterfield testified that he saw two of the men come out the front door and run toward the back of the house in the direction of the alley. The area was illuminated by Ms. Thompson's porch light and the street lights. Mr. Porterfield remembered that one of the men had on a white t-shirt that was pulled up over his face and the other two men were wearing dark clothing. According to Mr. Porterfield, the man with the shotgun was tall, skinny and older than the other two men. Mr. Porterfield thought that the two shorter men appeared to be about his height, five feet, nine inches tall. Mr. Porterfield told the police that one of the men had a "low" haircut. Although Mr. Porterfield knew Appellant, he stated that he would not have recognized him from that distance with his shirt pulled up over his face.

When the police arrived, Ms. Thompson was able to tell them that the men may have used an alley behind her house to escape. After speaking with the police briefly, Ms. Thompson was taken to the hospital for treatment. There was buckshot in her eyes and nose. Ms. Thompson's chest and arms were also swollen. The doctors told Ms. Thompson that she could not undergo surgery and that the buckshot would work itself out of her body once the swelling went down. Ms. Thompson testified that she was in a lot of pain and remained at the hospital overnight.

Sergeant James Howell of the Memphis Police Department was the case investigator for the incident. Two days after the robbery, the police received an anonymous phone call providing the names of possible suspects. Sergeant Howell was able to use this information to locate two possible suspects based on physical description. The caller identified one of the suspects as tall with a gray beard and one of the suspects as short and stocky in his early twenties. Sergeant Howell testified that the descriptions provided by the caller matched the descriptions provided by Mr. Porterfield.

From these descriptions, Sergeant Howell developed a photographic lineup with pictures of the suspects. Ms. Thompson, Mr. Norfleet and Mr. Williams went to the police station to look at the photographic lineups on December 11, 2001. From those pictures, Ms. Thompson identified Appellant as the man who pointed the handgun at her, her "three kids and boyfriend." Appellant had gold teeth, just as Ms. Thompson had described. Ms. Thompson also identified Appellant at trial.

Mr. Norfleet identified Chalmers Brown, also known as "Pancho," as the man who came into his room and demanded money. Mr. Brown later pled guilty to his involvement in the robbery and shooting.

According to Sergeant Howell, Mr. Williams was unable to identify anyone from the photographs.

Several days later, Mr. Brown was arrested while he was driving a gray Cadillac. In the trunk of the car, the arresting officer located a shotgun and a ski mask. Appellant was arrested several weeks later.

After the arrests, the Memphis Police received another call about the robbery. This caller informed the police that the first suspect, later identified as Mr. Brown, wore a skull cap pulled down over the top of his face. The cap had a large opening in the middle, making it easier for the victims to identify him. The second suspect did not wear a mask, but used his shirt or jacket to cover a portion of his face. The same caller indicated that the suspects left the scene in a gray Cadillac.

Sergeant Howell testified that the police received a third tip on December 20, 2001. During this call, three suspects were identified in connection with the home invasion and robbery. Appellant was not named as one of the possible suspects. The caller also gave an address as to the location of the Playstation II. Sergeant Howell could not remember if a search warrant was issued for the address listed in the phone call. The Playstation II was not recovered.

Appellant's brother, Mario Cooper, testified at trial. He was asked to identify a photograph at trial. The photograph was a mug shot labeled "Mario Cooper." However, Mr. Cooper testified that the person in the photograph was Appellant not him. Mr. Cooper testified that he had never been arrested.

Appellant's mother, Gail Cooper, testified at trial that Appellant was living with her and her husband, Joe E. Cooper, prior to his arrest. Mrs. Cooper testified that Appellant was a "little hard headed" but that she and her husband tried to raise him "right." Mrs. Cooper stated that Appellant was raised in the church where her husband was a preacher. On cross-examination, Mrs. Cooper stated that she was aware of Appellant's prior arrests, including his convictions for theft of property and unlawful possession of a weapon.

Appellant took the stand in his own defense. According to Appellant, he was convicted of unlawful possession of a controlled substance with intent to manufacture or sell in 1996. Appellant also confirmed his conviction for theft of property and unlawful possession of a weapon in 2000. Appellant claimed that he learned his lesson after his convictions in 2000, but admitted that he was later convicted of possession of marijuana and assault.

When Appellant examined the mug shot that was shown to Mario Cooper at trial, Appellant identified the person in the photograph as his brother, Mario Cooper. Appellant denied telling a booking officer that he was Mario because Mario did not have a criminal record.

Appellant denied his involvement in the robbery and shooting, claiming instead that he was at church on the night of the offense. Specifically, Appellant testified that he was at church from 7:00 p.m. until 9:30 p.m. Appellant stated that he was raised in the church, which is located next door to his childhood home, and that he is an usher at the church. According to Appellant, he spends every day except Thursday and Saturday at church.

Prior to trial, the trial court ordered that counts two, four, six, eight, and ten be held in abeyance to be dismissed on April 8, 2005. Count two charged Appellant with criminal attempt to commit first degree murder of Tara Thompson during the perpetration of a robbery, count four charged Appellant with criminal attempt to commit first degree murder of Tallen Williams during the perpetration of a robbery, count six charged Appellant with criminal attempt to commit first degree murder of Edwin Norfleet during the perpetration of a robbery, count eight charged Appellant with criminal attempt to commit first degree murder of Tanisha Thompson during the perpetration of a robbery, and count ten charged Appellant with criminal attempt to commit first degree murder of Jeraldrika Thompson during the perpetration of a robbery.

At the conclusion of the jury trial, the jury found Appellant guilty of four counts of criminal attempt to commit second degree murder, four counts of aggravated robbery, one count of aggravated burglary and one count of being a convicted felon in possession of a handgun. The jury acquitted Appellant of two counts of criminal attempt to commit first degree murder.

After a sentencing hearing, the trial court sentenced Appellant to an effective sixty-year sentence. Specifically, the trial court sentenced Appellant to eleven years for each conviction for criminal attempt to commit second degree murder, ten years for each conviction for aggravated robbery, four years for the aggravated burglary conviction, and two years for the possession of a firearm conviction. The trial court ordered the attempt to commit second degree murder convictions to run consecutively to each other, for a total of forty-four years. The trial court ordered the sentences on the aggravated robbery convictions to run concurrently to each other, but consecutively to the remaining convictions. The aggravated burglary conviction and possession of a firearm conviction were ordered to be served consecutively to the remaining convictions.

Appellant filed a motion for new trial, in which he argued: (1) the evidence was insufficient to support the convictions; (2) the conflicting testimony of Ms. Thompson and Mr. Norfleet was misleading and altered the jury's verdict; (3) the trial court erred in enhancing Appellant's sentence based on factors not found beyond a reasonable doubt by the jury nor admitted by the Appellant; (4) the trial court erred by not allowing Appellant to "pursue alternative theories based upon evidence of the victim's known behavior;" (5) the trial court erred by refusing to allow Appellant's mother to offer alibi testimony; and (6) the trial court erred by enhancing Appellant's sentence based on factors which were elements of the offense and erred by ordering the sentences to run consecutively.

The trial court denied the motion for new trial after a hearing. Appellant filed a timely notice of appeal. On appeal, Appellant presents the following issues for our review: (1) whether the evidence is sufficient to support the convictions; (2) whether the trial court erred "in refusing to allow Appellant to argue alternative theories" at trial; (3) whether the trial court erred in refusing to admit exculpatory evidence; (4) whether the trial court improperly instructed the jury on lesser included offenses; (5) whether Appellant's sentences were excessive; and (6) whether the trial court erred by ordering Appellant to serve his sentences consecutively.

*Analysis*

*Allowing Appellant to Argue Alternate Theories*

Appellant argues on appeal that the trial court erred by prohibiting him from arguing or introducing alternate theories of the crime at trial. Specifically, Appellant complains that the trial court abused its discretion by refusing to admit evidence that victim Tallen Williams was a known drug dealer who more than likely knew the assailants and was not willing to identify them. The State argues that the evidence was not relevant and did nothing to exculpate Appellant.

At trial, counsel for Appellant asked Ms. Thompson if Mr. Williams was a "drug dealer." Ms. Thompson stated that she did not know despite the fact that the two lived together off and on for a period of time. Counsel for Appellant made clear during a side bar that he intended to show that the victim's house was a "drug house," pointing to the fact that Tallen Williams had at least three prior felony drug convictions. The trial court prohibited counsel for Appellant from asking Ms. Thompson if she was aware of Mr. Williams' convictions because they were irrelevant. Further, the trial court determined that the issue in the case was the identity of the assailants, not their purpose for being at the residence or their knowledge of what was going on at the residence.

In order to be admissible, evidence must be relevant and probative to an issue at trial. *State v. McCary*, 922 S.W.2d 511, 515 (Tenn. 1996); *see also* Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence may be excluded at trial if the probative value of that evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Tenn. R. Evid. 403. The determination of relevancy is left to the discretion of the trial court, and this Court will not overturn a trial court's determination in this regard in the absence of an abuse of discretion. *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

The trial court did not abuse its discretion. Appellant has failed to show that the evidence was relevant to a material issue at trial. The fact that Mr. Williams may or may not be a drug dealer has no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. This issue is without merit.

Next, Appellant argues that the trial court erred by refusing to admit "relevant and exculpatory" evidence. Specifically, Appellant contends that the trial court: (1) refused to permit his mother to testify as an alibi witness; (2) should have allowed Appellant to question Sergeant Howell as to whether Mr. Brown identified Appellant in a photographic lineup; and (3) prejudiced Appellant by refusing to require the State to provide the statement of Mr. Williams.

When an issue is raised for the first time on appeal, it is typically waived. *See* Tenn. R. App. P. 3(e); *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). Appellant has waived the issues regarding Mr. Brown's identification of Appellant and the State's alleged failure to provide the statement of Mr. Williams for failing to raise them in a motion for new trial.

Appellant argues that the trial court refused to allow Appellant's mother to testify as to the whereabouts of Appellant on the night of the robbery. At trial, the trial court refused to allow Appellant's mother to testify regarding an alibi because Appellant did not file a notice of alibi prior to trial. Prior to trial, the State filed a Demand for Notice of Alibi. At trial, counsel for Appellant acknowledged that he failed to comply with Tennessee Rule of Criminal Procedure 12.1 by failing to properly respond to the State's Notice for Demand of Alibi. After hearing some discussion on the matter, the trial court determined that Appellant did not make a showing of good cause to excuse him from responding to the notice prior to trial. The trial court determined that this alibi witness existed for "three and a half years" during the pendency of the case prior to trial and that counsel's insistence that he received information about the witness, Appellant's own mother, the night before trial did not excuse the failure to respond to the State's notice.

On appeal, Appellant's entire argument in regard to this issue is as follows: "The appellant would submit that the witness should have been permitted to testify as to the whereabouts of appellant." Thus, Appellant's brief contains only a blanket statement that the trial court should have allowed this testimony without accompaniment by argument, citation to authority, or citation to the record. Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Sanders*, 842 S.W.2d 257 (Tenn. Crim. App. 1992) (determining that issue was waived where defendant cited no authority to support his complaint). Because Appellant fails to cite any authority, argument, or appropriate references to the record for his claim, this issue is waived.

Moreover, Tennessee Rule of Criminal Procedure 12.1(d) specifically grants a trial court the authority to exclude the testimony of an alibi witness when a criminal defendant fails to give notice to the prosecutor of a potential alibi witness. While subsection (e) of the rule allows a good faith exception to exclusion of the witnesses testimony, we agree with the trial court that not discovering

-8-

until the eve of trial that Appellant's own mother could provide an alibi is not good cause to permit her testimony.

*Sufficiency of the Evidence*

Appellant challenges the sufficiency of the evidence for his convictions for attempted second degree murder and aggravated robbery. Specifically, Appellant argues that the State's proof was "replete with inconsistencies" and that he could not be convicted of "four counts of criminal attempt second degree murder or four counts of aggravated robbery based upon one act" because the multiple convictions violate double jeopardy.[1] The State disagrees, arguing that the jury was charged with assessing the credibility of the witnesses and that because the items stolen from the house were the property of the entire family, Appellant was properly convicted of four counts of aggravated robbery and four counts of attempted second degree murder.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

---

[1]Appellant did not initially challenge his convictions for aggravated robbery on the basis of double jeopardy. After oral argument in this Court, the parties were instructed to brief the double jeopardy issue with regard to the convictions for aggravated robbery.

*Attempted Second Degree Murder*

The following statute defines criminal attempt:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

T.C.A. § 39-12-101(a), (b). Second degree murder is the knowing killing of another. T.C.A. § 39-13-210(a)(1). In order to convict Appellant of attempted second degree murder, the State was required to prove that Appellant acted with the intent to cause the knowing killing of another, believing his conduct would cause the result without further conduct on his part. T.C.A. §§ 39-12-101(a)(2), 39-13-210(a).

By challenging the inconsistencies among the testimony of the State's witnesses, Appellant invites this Court to reassess the trial evidence and substitute our own inferences and credibility determinations for those of the jury. We reject the invitation, as we must, pursuant to our circumscribed standard of appellate review. A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in the State's favor. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

Ms. Thompson and Mr. Norfleet testified as to the events surrounding the home invasion and robbery at trial. They both testified that Appellant entered their home, wielding a gun, and that Ms. Thompson and the family dog were shot during the home invasion. Ms. Thompson was holding her daughter Tanisha on her lap at the time that she was shot. Additionally, Ms. Thompson was told that the child needed to be quiet "or else" she would be shot. Jeraldrika was in the floor next to Ms. Thompson. Mr. Norfleet was in his bedroom when a shotgun was pointed at him. Mr. Norfleet was also hit on the top of the head and above the ear with the butt of the gun. He was later ordered to walk out of the room into the hallway, where he saw Ms. Thompson and the other two children being held at gunpoint. Mr. Norfleet was then ordered to go into his mother's room, place his hands

behind his head and stay still, all while continuing to be held at gunpoint. Ms. Thompson identified Appellant as one of the perpetrators from a photographic lineup and at trial. From the proof, the jury could have found that Appellant's conduct was reasonably certain to cause Ms. Thompson's or Tanisha's death, and that Appellant intended to kill Ms. Thompson and/or Tanisha based upon the use of a deadly weapon, his threats, and the seriousness of the wounds inflicted to Ms. Thompson. *State v. Inlow*, 52 S.W.3d 101, 104-05 (Tenn. Crim. App. 2000); *State v. Elder*, 982 S.W.2d 871, 875-76 (Tenn. Crim. App. 1998). In other words, the proof offered at trial would be sufficient for the jury to convict Appellant of the attempted second degree murder of Ms. Thompson and Tanisha beyond a reasonable doubt. However, we conclude that the evidence is not sufficient to support attempted second degree murder convictions as to Jeraldrika or Mr. Norfleet as there is no evidence that Appellant attempted a knowing killing of either of those individuals. Therefore, we reverse and dismiss two of Appellant's convictions for attempted second degree murder.

*Aggravated Robbery*

Appellant challenges his convictions for aggravated robbery on double jeopardy grounds. Specifically, Appellant argues that he could not be convicted of four counts of aggravated robbery when there was only one act of robbery. Citing *State v. Franklin*, 130 S.W.3d 789 (Tenn. Crim. App. 2003), Appellant argues that his multiple convictions for aggravated robbery violate the principles of double jeopardy. The State disagrees, arguing instead that *Morgan v. State*, 415 S.W.2d 879 (Tenn. 1967), supports its position that Appellant was properly convicted of four counts of aggravated robbery where there were four victims to the crime.

We start our analysis with the definition of aggravated robbery. A person commits aggravated robbery who commits a robbery with a deadly weapon. T.C.A. § 39-13-402(a)(1). Robbery "is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103.

Keeping that definition in mind, we acknowledge that both our federal and state constitutions prohibit persons from being "twice put in jeopardy" for the same offense. U.S. Const. amend. V; Tenn. Const. art. I, § 10. "This prohibition against 'double jeopardy' provides protection from three evils: (1) a second prosecution after an acquittal; (2) a second prosecution after a conviction; and (3) multiple punishments for the same offense." *Franklin*, 130 S.W.3d at 797 (citing *State v. Lewis*, 958 S.W.2d 736, 738 (Tenn. 1997)).

The double jeopardy issues implicated when there are multiple convictions for aggravated robbery arising from a single criminal episode have been examined by this Court before. In *Franklin*, the owner of an Amoco market and his employee were working behind the sales counter when the defendant and the co-defendant entered the store. The defendant, brandishing a handgun, went behind the counter and ordered the store's owner to open the cash register. The defendant took the money from the cash register. He then told the owner and his employee to go into the market's

-11-

restroom, and the two perpetrators left the store. Defendant was later convicted of two counts of aggravated robbery. *Franklin*, 130 S.W.3d at 791. Although the State pursued dual convictions under the theory that two employees had been threatened with a handgun, a panel of this Court concluded that the defendants had committed a single theft from the Amoco market and, therefore, only one aggravated robbery. *Id.* at 798. As a result, this Court modified one of the convictions for aggravated robbery to a conviction for aggravated assault based on the defendant's act of using a gun to threaten the victims during the robbery and remanded the matter for resentencing. *Id.*

> After an examination of similar issues in other state courts, the *Franklin* court observed that:
>
> Tennessee's legislature has defined robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). Thus, Tennessee's robbery statute is defined in terms of "theft." "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103. Our supreme court has recognized that, "[t]he element which distinguishes robbery from theft is the use of violence or fear." *State v. Owens*, 20 S.W.3d 634, 638 (Tenn. 2000). "Therefore, whether a taking is properly characterized as a theft or a robbery is contingent upon whether and when violence or fear is imposed." *Id.* Indeed, Tennessee courts have frequently characterized the crime of robbery as "'an aggravated form of larceny.'" *See, e.g., State v. Winsett*, 217 Tenn. 564, 399 S.W.2d 741, 742 (Tenn. 1965) (quoting 54 C.J. 1010); *Freeman v. State*, 520 S.W.2d 739, 741 (Tenn. Crim. App. 1974)).

*Id.* at 796.

In *Franklin*, the court concluded that:

> Tennessee appears to distinguish robbery from theft on the basis of the method of the taking, rather than on the basis of from whom the property is taken. "It is violence that makes robbery an offense of greater atrocity than larceny." *Winsett*, 399 S.W.2d, at 743. The method of the taking remains unaffected by the number of persons who may be threatened during the crime. Accordingly, we hold that the proper unit of prosecution for robbery in Tennessee is the number of takings, i.e. the number of thefts.

*Id.* at 796-97.

The State cites *Morgan v. State*, 415 S.W.2d 879 (Tenn. 1967), to support its position that Appellant could be convicted of more than one count of aggravated robbery. The State contends that the holding in *Morgan* belies the holding in *Franklin* and permits multiple convictions for aggravated robbery in the case herein because the victims jointly owned the stolen property. In *Morgan*, two defendants forced their way into the home of sixty-one-year-old twins Liza and Martha

Messer and their mother, one-hundred-and-two-year-old Mary Jane Messer. The women were assaulted, tied and gagged. The defendants took $4,000 belonging to Liza and Martha, $35 from a pocketbook belonging to Mary Jane, a .32 caliber pistol, various papers, deeds and a photograph. *Id.* at 881. In two separate trials,[2] a jury convicted the defendants of armed robbery. On appeal, the defendants challenged the dual convictions on the basis of double jeopardy because all of the victims lived together, jointly owned the money and the robbery occurred as a single act. *Id.* at 882. The court determined that the defendants could be separately prosecuted for armed robbery on the twin sisters and their mother, stating that "'where an accused robbed two or more persons at the same time the prosecution for one of the robberies does not prevent a subsequent prosecution for another.'" *Id.* at 882 (quoting 22 C.J.S. Criminal Law § 298). We do not find the court's decision in *Morgan* antipodean to the holding in *Franklin*. In *Morgan*, it is clear that the defendants were charged and prosecuted separately for each act against each individual victim and each individual theft. That is, the defendants were prosecuted separately for taking the $4,000 from the twin sisters and for taking the $35 from the mother. These acts were clearly separate "thefts" even though the individual thefts occurred within a single criminal episode.

Thus, looking at *Franklin*, we must determine the number of thefts that occurred at the Thompson residence in order to determine if Appellant's multiple convictions for aggravated robbery violate double jeopardy. While at the residence, the perpetrators stole a Playstation II, some video games and some money from the wallet of Mr. Williams.[3] The testimony during trial revealed that Ms. Thompson bought the Playstation II and video games for her son, Mr. Norfleet, that day as an early Christmas present. In this case, Appellant committed a single theft from the Thompson residence, albeit in the presence of the entire Thompson family and Mr. Williams, by the display of a handgun and shotgun. That is, the evidence in this case is only sufficient to support one aggravated robbery conviction against Appellant, not four. Accordingly, double jeopardy principles require that three of the four aggravated robbery convictions against Appellant be reversed. Mr. Norfleet suffered the actual loss of the Playstation II and video games, as the testimony at trial indicated that they were an early Christmas present. Accordingly, under the facts of this case, we reverse the aggravated robbery convictions arising from the charges naming Tara Thompson, Jeraldrika Thompson and Tanisha Thompson as the victims and affirm the aggravated robbery conviction with respect to the theft of Mr. Norfleet's Playstation II. By doing so, we in no way mean to diminish the seriousness of the attacks upon the other victims.

Even though we are reversing three of the four aggravated robbery convictions, that is not to say that Appellant did not commit crimes against the remaining victims. We determine that the evidence is sufficient to support three convictions against Appellant for aggravated assault as a lesser included offense of aggravated robbery. "Because aggravated assault is a lesser included offense of aggravated robbery, . . . [Appellant] was also charged with this crime in each of the [four] counts [of

[2]From *Morgan*, it appears that one trial was for the taking of the $4,000 from Liza Messer; the other trial was for the taking of the $35 from Mary Jane Messer.

[3]On appeal, Appellant does not address the money that was stolen from Mr. Williams during the robbery as he was acquitted of this count at trial.

the indictment] alleging aggravated robbery." *Franklin*, 130 S.W.3d at 798 (citing *State v. Jason C. Carter*, No. M1998-00798-CCA-R3-CD, 2000 WL 515930, at *8 (Tenn. Crim. App., at Nashville, Apr. 27, 2000) (determining that aggravated assault is a lesser included offense of especially aggravated robbery)). Appellant intentionally or knowingly displayed a gun to all of the occupants in the house and, thereby, caused them to reasonably fear imminent bodily injury. *See* T.C.A. § 39-13-102(a)(1)(B). Each of the victims was threatened with a gun during the course of the robbery. Ms. Thompson was shot in the face. Mr. Norfleet was beaten with the butt of the shotgun, and both of the small children were extremely frightened. However, unlike the case in *Franklin*, we cannot modify all three of the remaining convictions for aggravated robbery to convictions for aggravated assault because Appellant herein has already been convicted of attempted second degree murder for his actions against Ms. Thompson and Tanisha. To find Appellant guilty of both attempted second degree murder and aggravated assault with respect to the same actions would be a violation of double jeopardy. *See State v. Hall*, 947 S.W.2d 181, 183-84 (Tenn. Crim. App. 1997) (determining that convictions for attempted second degree murder and aggravated assault violated double jeopardy when convictions were based on the same evidence and the statutes preventing the crimes had the same purpose). However, with respect to the remaining conviction for aggravated robbery as to acts committed against Jeraldrika Thompson, we modify the conviction to aggravated assault. Consequently, we affirm Appellant's aggravated robbery conviction with respect to the theft of the Playstation II from Mr. Norfleet, reverse and dismiss the aggravated robbery convictions with respect to Ms. Thompson and Tanisha Thompson, and modify the remaining aggravated robbery conviction with respect to Jeraldrika Thompson to aggravated assault. The matter is remanded to the trial court for sentencing on that conviction.

*Lesser Included Offenses*

Next, Appellant claims that the trial court improperly instructed the jury on lesser included offenses. Specifically, Appellant submits that the evidence at trial supported an instruction on attempt to commit manslaughter, facilitation of manslaughter, attempt to commit reckless endangerment and facilitation of reckless endangerment as lesser included offenses of attempt to commit first degree murder. Appellant also argues that the evidence at trial supported instructions on attempt to commit aggravated robbery, attempt to commit robbery, and theft of property as lesser included offenses of aggravated robbery. Appellant contends that the trial court's failure to instruct the jury properly amounted to plain error. The State argues that Appellant has waived this issue by failing to request specific jury instructions at trial and by raising the issue for the first time on appeal.

Appellant did not raise the trial court's failure to instruct the jury on the lesser included offenses in his motion for a new trial. Accordingly, we find that Appellant failed to preserve this issue for appeal pursuant to the Tennessee Rules of Appellate Procedure. *See* Tenn. R. App. P. 3(e), and 36(a). Moreover, in this case we are statutorily bound to find that Appellant waived this issue by failing to submit a written request for the lesser included jury instructions at trial. T.C.A. § 40-18-110, in pertinent part, provides:

-14-

(b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

(c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

T.C.A. § 40-18-110(b), and (c). Our supreme court has recently concluded that "Tennessee Code Annotated section 40-18-110(c) does not violate a defendant's right to trial by jury." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). Therefore, we conclude the issue is waived. Our supreme court also made clear, however, that in such a case an appellate court may still review the issue for plain error. *Id.* at 230.

We briefly consider whether it is appropriate to review the failure to charge the complained of lesser included offenses under the doctrine of plain error. The doctrine of plain error provides that where necessary to do substantial justice, an appellate court may take notice of a "plain error" not raised at trial if it affected a substantial right of the defendant. Tenn. R. Crim. P. 52(b). In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused must not have waived the issue for tactical reasons, and (5) consideration of the error is necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (adopting five factors set out in *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)). As our supreme court stated in *Page*, "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *Page*, 184 S.W.3d at 231. Appellate courts are advised to use plain error sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default. *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007). When an issue is raised regarding the trial court's failure to instruct on a lesser included offense, our analysis typically involves a determination of: (1) whether the offense is a lesser included offense under the test adopted in *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999); (2) whether the evidence supports an instruction on the lesser included offense; and (3) whether the failure to instruct on the lesser included offense constitutes harmless error. *State v. Allen*, 69 S.W.3d 181, 187 (Tenn. 2002). In this case, the State concedes that voluntary manslaughter is a lesser included offense of first and second degree murder. *See State v. Dominy*, 6 S.W.3d 472, 477 n.9 (Tenn. 1999). Likewise, the State concedes that reckless endangerment is a lesser included offense of attempted first degree murder. *See State v. Rush*, 50 S.W.3d 424, 431-32 (Tenn. 2001). Moreover, the State does not suggest that theft is not a lesser included offense of robbery. To the contrary, the State correctly notes that it is "well-established" that theft is a lesser included offense of aggravated robbery. *See State v. Bowles*, 52 S.W.3d 69, 79-80 (Tenn. 2001).

Appellant, however, bears the burden of persuasion with plain error claims. *See State v. Corey C. Abernathy*, No. E2005-00266-CCA-R3-CD, 2005 WL 3447672, at \*6 (Tenn. Crim. App., at Knoxville, Dec.14, 2005) (citing *United States v. Olano*, 507 U.S. 725, 732-37 (1993)). Here, as in *Page*, Appellant has failed to show he did not waive this issue for tactical reasons. Therefore, we decline to find plain error. Appellant is not entitled to relief on this issue.

*Sentencing*

Finally, Appellant challenges his sentence. Specifically, he argues that his sentence is excessive and that the trial court erred in ordering him to serve it consecutively. The State contends that Appellant's claims are without merit because the record "fully supports" the trial court's judgment.

Recently, in response to *Cunningham v. California*, 549 U.S. ___, 127 S. Ct. 856 (2007), the Tennessee Supreme Court issued an opinion on remand from the United States Supreme Court in *State v. Gomez*, No. M2002-01209-SC-R11-CD, ___ S.W.3d ___, 2007 WL 2917726 (Tenn. Oct. 9, 2007) ("*Gomez II*") that affects our review of sentencing issues, specifically as to the application of enhancement factors to determine a defendant's sentence. On initial review of the issues in *State v. Gomez*, 163 S.W.3d 632, 650 (Tenn. 2005) ("*Gomez I*"), which was filed on April 15, 2005, the court concluded that the defendants were limited to plain error review of their sentencing claims regarding the Sixth Amendment due to their failure to preserve the issues for plenary review. In *Gomez II*, the court adhered to its decision that the defendants had waived plenary appellate review of their sentencing claims, but determined that in light of the *Cunningham* decision, a trial court's enhancement of a defendant's sentence on the basis of judicially determined facts other than the defendant's prior convictions violates the defendant's constitutional rights under the Sixth Amendment to the United States Constitution. *Gomez*, ___ S.W.3d ___, 2007 WL 2917726, at \*6.

In the case herein, Appellant's sentencing hearing was held on July 15, 2005, and his motion for new trial was filed on August 17, 2005, both after the filing of the *Gomez I* opinion. Appellant did not raise a challenge to his sentence based on the Sixth Amendment at his sentencing hearing, in his motion for new trial, or on appeal. Instead, Appellant makes a blanket argument on appeal that the trial court improperly applied enhancement factors to his convictions "based upon factors which were not supported by the evidence and which were elements of the charged offense" and that the trial court failed to consider appropriate mitigating factors. In *Gomez I*, the court determined that the Sixth Amendment issue was waived because the defendants "did not raise this constitutional challenge at their . . . sentencing hearing or in their motions for new trial, nor did they raise it in the Court of Criminal Appeals." *Gomez*, 163 S.W.3d at 648. After the release of the court's opinion in *Gomez I,* this Court determined that a failure to raise the Sixth Amendment challenge to a sentence at the sentencing hearing results in a waiver of the issue for plenary review. *See, e.g.*, *State v. Mickey Lee Williams*, No. E2004-01617-CCA-R3-CD, 2005 WL 2240736, at \*5 (Tenn. Crim. App., at Knoxville, Sept. 15, 2005), *perm. app. denied*, (Tenn. Feb. 21, 2006); *State v. Karl Blake*, No. M2004-02731-CCA-R3-CD, 2005 WL 2205877, at \*5 (Tenn. Crim. App., at Nashville, Sept. 8, 2005); *State v. Billy R. Shelley*, No. E2004-00145-CCA-R3-CD, 2005 WL 1798637, at \*4 (Tenn.

Crim. App., at Knoxville, Jul. 29, 2005), *perm. app. denied*, (Tenn. Dec. 19, 2005).  Under similar circumstances as these presented here, *Gomez II* instructed the courts of this state to address waived sentencing issues regarding the application of enhancement factors in violation of the Sixth Amendment via plain error review as embodied in Tennessee Rule of Criminal Procedure 52(b). *Gomez*, ___ S.W.3d ___, 2007 WL 2917726, at *2.

Appellate courts are advised to use plain error review sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default. *Adkisson*, 899 S.W.2d at 639 (quoting *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980)); *see also Bledsoe*, 226 S.W.3d at 354.  In this case, therefore, we choose not to review Appellant's sentence via plain error.  Appellant makes no claim that his sentence violates his right to a jury trial.  Further, Appellant fails to accompany his blanket complaints about his sentence with argument or citation to authority which would show how or why the trial court improperly applied enhancement factors. Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain, "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on."  Tennessee Court of Criminal Appeals Rule 10(b) states that, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also Sanders*, 842 S.W.2d at 260-61.  Appellant does not accompany this blanket statement with any argument. Therefore, this issue is waived.

Appellant also contends that he improperly received a greater sentence than his co-defendant, who pled guilty and received a twenty-three year sentence.  Appellant makes this argument without providing any authority for such a claim.  This Court has determined that a defendant may not use the sentences received by his co-defendants as "yardsticks" for the sentence he argues he should have received. *See State v. Lawrence Douglas*, No. W2000-01749-CCA-R3-CD, 2001 WL 912778, at *7 (Tenn. Crim. App., at Jackson, Aug. 10, 2001) (citing *United States v. Devine*, 934 F.2d 1325, 1338-39 (5th Cir. 1991) and *United States v. Harrison*, 918 F.2d 469, 475 (5th Cir. 1990)).

Appellant also argues that the trial court erred in imposing consecutive sentences.  A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in T.C.A. § 40-35-115(b) exists.  To that end, consecutive sentences may be ordered if the trial court determines by a preponderance of the evidence that:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person . . . ;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor . . . ;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b).

The decision to impose concurrent or consecutive sentences is a matter entrusted to the sound discretion of the trial court. *State v. Blouvet*, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997). Before ordering the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct, and in accord with the general sentencing principles. *See State v. Imfeld*, 70 S.W.3d 698, 708-09 (Tenn. 2002); *State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995).[4]

At the conclusion of the sentencing hearing, the trial court stated that Appellant's consecutive sentences would be based on the fact that Appellant "is a dangerous offender, whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high . . . ." T.C.A. § 40-35-115(b)(2), -115(b)(4). The trial court stated the following:

> Now, the remaining question is concurrent or consecutive sentencing. I don't think that No. 2 is necessarily applicable here. He has a significant criminal history but only one felony conviction, so I don't think, as defendants go in these courts, his record would be one of extensive criminal history. So I don't think that would apply.

---

[4] Prior to our supreme court's decision in *Gomez I*, it had specifically noted that *Blakely v. Washington*, 524 U.S. 296 (2004), did not impact Tennessee's consecutive sentencing scheme. *State v. Robinson*, 146 S.W.3d 469, 499 n.14 (Tenn. 2004). In addition, this Court has consistently found that *Blakely* does not affect consecutive sentencing determinations. *See, e.g., State v. Earice Roberts*, No. W2003-02668-CCA-R3-CD, 2004 WL 2715316, at *15 (Tenn. Crim. App., at Jackson, Nov. 23, 2004), *perm. app. denied*, (Tenn. Mar. 21, 2005); *State v. Lawrence Warren Pierce*, No. M2003-01924-CCA-R3-CD, 2004 WL 2533794, at *16 (Tenn. Crim. App., at Nashville, Nov. 9, 2004), *perm. app. denied*, (Tenn. Feb. 28, 2005).

But I do think that [Appellant] is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high for purposes of consecutive sentencing.

The events of that night would, I think, clearly bear that out. He went into that home with his co-defendant or defendants, and as we've already discussed several times, he was a primary actor in the events of that night. He was the individual who was identified by the witnesses as the person who herded this family - these four [sic] minor children and the mother into this room, and there was an adult man in that room as well. . . .

. . . .

[B]ut obviously none of those defendants had any regard for human life based on their behavior and no hesitation about committing a crime in which the risk to human life was high. But for that dog jumping in front, who knows [what] the injuries would have ultimately been.

. . . .

[Appellant's behavior] clearly does, by any common-sense definition of the English language, meet that criteria, and consecutive sentencing is needed for the punishment to, in any way, fit the crimes that were committed - to even approximate fitting the crimes that were committed that night on this family and these young kids.

If concurrent sentences were given, then it would seem to have no deterrent effect on rounding people out - getting as many people as you can into a room to commit your crime - putting as many people as possible in danger, the number wouldn't matter. . . . So, I think, by any definition, this man's conduct that night in that house would constitute - would qualify him as a dangerous offender, and I'm going to order all of these to be served consecutively.

It is true, as Appellant suggests, that the trial court failed to specifically make the required *Wilkerson* findings on the record before sentencing Appellant to consecutive sentences as a dangerous offender. Nevertheless, this Court may uphold consecutive sentencing if we are able to make the *Wilkerson* determinations from the record on appeal. *See State v. Chivous Sirrel Robinson*, No. E2001-00865-CCA-R3-CD, 2003 WL 649115, at *5 (Tenn. Crim. App., at Knoxville, Feb. 8, 2003), *perm. app. denied*, (Tenn. Jul. 7, 2003) (citing *State v. Daronopolis R. Sweatt*, No. M1999-2522-CCA-R3-CD, 2000 WL 1649502, at *9-10 (Tenn. Crim. App., at Jackson, Nov. 3, 2000)).

While the trial court did not expressly address the two *Wilkerson* factors, it is apparent from the trial court's findings that it felt consecutive sentencing was necessary to protect the public from

further criminal conduct by Appellant, the second *Wilkerson* factor. *Id.* The trial court commented that concurrent sentences would "seem to have no deterrent effect" on similar behavior by Appellant in the future. The trial court failed to expressly state that the effective sentence of sixty years reasonably related to the severity of the offenses, the first *Wilkerson* factor. *Id.* However, the trial court's remarks that "consecutive sentencing is needed for the punishment to, in any way, fit the crimes that were committed - to even approximate fitting the crimes that were committed that night on this family and these young kids," show that the trial court considered this factor. Under these circumstances, we find that the imposition of consecutive sentencing was appropriate in this case. Appellant is not entitled to relief on this matter.

*Conclusion*

For the foregoing reasons, we affirm Appellant's convictions for attempted second degree murder with respect to victims Ms. Thompson and Tanisha Thompson. We reverse the remaining two convictions for attempted second degree murder. Further, we affirm one of Appellant's convictions for aggravated robbery. The convictions for aggravated robbery with respect to victims Ms. Thompson and Tanisha Thompson are reversed and dismissed. The remaining convictions for aggravated robbery with respect to victim Jeraldrika Thompson is modified to aggravated assault and the matter is remanded to the trial court for sentencing. In all other respects, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE